## ROSENWASSER *v.* SPIETH.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MAINE.

No. 122. Argued December 11, 12, 1888. — Decided January 14, 1889.

The improvement in percolators, for which letters patent were granted April 18, 1882, to Nathan Rosenwasser, was anticipated by an apparatus described in Geiger's Handbuch der Pharmacie, published at Stuttgart in 1830.

In equity for an alleged infringement of letters patent. The bill prayed for a discovery, and an accounting, and the payment of all gains and profits discovered on the accounting, and for injunctions, both interlocutory and final. The answer denied that the plaintiffs invented the patented improvement or that the alleged invention was patentable. The final decree

dismissed the bill, from which the plaintiffs appealed. The case is stated in the opinion.

*Mr. William Henry Clifford* for appellants.

*Mr. Wilbur F. Lunt* for appellee.

MR. JUSTICE GRAY delivered the opinion of the court.

This is a bill in equity for the infringement of letters patent granted April 18, 1882, to Nathan Rosenwasser for improvements in percolators, with the following specification and claim :

" My invention relates to percolating apparatus to be employed for filtering purposes, or for making fluid extracts or decoctions, and it consists in a device constructed and adapted to operate substantially in the manner hereinafter specified.

" In the drawings, figure 1 represents my device in longitudinal section, and Fig. 2 shows the application of said device when used as a filter or in making fluid extracts.

" A is the main body of my percolator. B is a constricted inlet. C is the enlarged open end, which serves the double purpose of a discharge or outlet, and as an opening through which the percolator is charged with filtering substance when the device is to be used as a filter, or with any drug from which an extract is to be made. D is a perforated plate. This plate may, if desired, be replaced by any porous diaphragm or interposing substance, such as filter paper, cloth, pumice, or the like. This is to prevent the drug from escaping from the percolator during its use, and it is to be secured in position by suitable means. E represents the drug from which an extract is to be made, or if the device is to be used as a filter, then E represents charcoal, sand, or any suitable filtering material.

" I will describe my apparatus as employed in making fluid extracts. The container A is charged with any drug or substance, E, from which an extract is to be made. The drug E is charged into the container A through the enlarged mouth C. Now, by the ordinary process and mechanism for making

fluid extracts, it has heretofore been the practice to charge the menstruum into the large mouth C; but this method made it impracticable to obtain any increased or variable pressure upon the menstruum, unless a cap piece were fitted over the enlarged mouth C, and a tube or its equivalent attacned, and connected either to an elevated reservoir containing the menstruum, or else some special pressure apparatus connected with said tube. All this in practice is impracticable; but by the employment of my device and method it is a very easy matter to charge the container A, and by applying the menstruum in exactly an opposite manner from that heretofore adopted, viz.; to the end of the container A, opposite the charging mouth C, to exert any desired pressure upon the menstruum. Fig. 2 of the drawings illustrates my method and mechanism, which consists, after the container A is charged in the usual manner through its enlarged mouth C, as already specified, in inverting the percolator, attaching a flexible or other tube, F, to the constricted mouth B, and applying the menstruum through said tube from an elevated reservoir G. When thus used, the enlarged mouth C becomes the ultimate discharge, which has never before, to my knowledge, been true in any method heretofore known or practised. By elevating the reservoir G more or less, a greater or lighter pressure is exerted by the menstruum, and it is therefore driven through the drug more or less forcibly and rapidly. This pressure, as may readily be seen, can be nicely adjusted and varied at pleasure to suit the requirements of any case. A stop-cock, H, may be used to govern the quantity of the menstruum admitted to the percolator A.

"What I claim is: The combination, with a vessel, G, and adjustable tube, F, of a percolator, A, having a large filling and discharge orifice at its lower end, and a restricted opening, B, at its upper end, with which connects the lower end of the adjustable tube or pipe F, substantially as set forth."

The description of the percolator, and of the mode of using it to make fluid extracts or decoctions of drugs, amounts to this: The percolator is a cylinder wholly open at the lower end, and with a cover at the upper end, having a small open-

ing, attached to which is a flexible or adjustable tube leading from a reservoir of the liquid to be used for steeping the drug. The percolator is turned bottom up while the drug is put in, and a perforated or porous diaphragm inserted to hold the drug in place. It is then turned bottom down again. The pressure of the liquid, and consequently the quickness of its passage through the drug, are increased or diminished by elevating or lowering the reservoir, or by turning a stop-cock in the tube; and the extract is discharged through the bottom of the percolator into a vessel placed below.

The novelties suggested consist in having one end of the percolator open, serving both to receive the drug and to discharge the extract; in turning the percolator bottom up to put in the drug, and bottom down to let the extract drip out; in having a perforated or porous diaphragm to hold the drug in place; and in regulating the pressure of the liquid by means of a tube from the reservoir to the small opening in the covered end of the percolator.

But, passing over the difficulty that the diaphragm is not claimed as part of the combination patented, neither the percolator open at one end, the diaphragm, the inversion of the percolator, the insertion of the tube in the small opening in the covered end, nor the making that tube flexible and with a stop-cock, is new. All those elements appear in the Real press, as modified by Beindorf, described in Geiger's Handbuch der Pharmacie, published in 1830 at Stuttgart in Germany, which is an exhibit in the case, and a translation of the material parts of which, (vol. 1, pp. 157–160,) verified by the oath of a witness for the defendant, and included in the record, appears, though not quite grammatical, to be substantially accurate, notwithstanding the opposing testimony introduced by the plaintiff to impugn its correctness.

It will be sufficient to quote from that translation the following passages :[1] "The Real press consists principally of a

---

[1] "Die *Real'sche Presse* besteht der Hauptsache nach aus einem hohlen Cylinder, in welchem die auszuziehende Substanz im gepulverten Zustande zwischen 2 siebförmig durchlöcherten Platten fest gepackt enthalten ist, so dass sie nach keiner Seite hin weichen kann. Wenn der Cylinder an beiden

Opinion of the Court.

hollow cylinder, which contains the powdered substance to
be exhausted between two perforated plates, tightly packed,
so that the substance cannot move to [in] either direction,
If the cylinder is open at both ends, a cover is fitted air-tight
at one end, having a hole in the centre, into which a long
tube is fitted, also air-tight. Between the cover and the per-
forated plate mentioned some space must remain. In extract-
ing, the cylinder is placed vertical [upright], so that a vessel
for gathering the liquid may be placed underneath." "A
very practical change in the construction of the Real press
has been introduced by Beindorf. The cylinder is fitted into
a chair [frame], the cover or seat of which is movable, so that
by turning [inverting] the same the press may be filled and
connected with the tube." "The filled cylinder, turned bot-
tom up, is placed upon a chair [frame] having a hole in the

Enden offen ist, so wird an einem Ende ein Deckel luftdicht aufgepasst,
welcher in der Mitte ein Loch hat, worein eine hohe Röhre ebenfalls luft-
dicht gesteckt wird. Zwischen dem Deckel und der obern siebförmigen
Platte muss etwas Raum bleiben. Beim Extrahiren wird der Cylinder auf-
recht festgestellt, so dass ein Gefäss zum Aufsammeln der Flüssigkeit
untergestellt werden kann." " Eine sehr zweckmässige Abänderung der
Real'schen Presse hat *Beindorf* vorgenommen. Der Cylinder wird in einen
Stuhl gepasst, dessen Deckel beweglich ist, so dass durch Umdrehen des-
selben die Presse gefühlt und mit dem Rohr verbunden werden kann."
" Der gefühlte, mit dem Boden nach oben gerichtete Cylinder wird auf
einen Stuhl gestellt, der in der Mitte ein Loch hat, in welches derselbe
passt und mit seinem Wulste aufliegt." " Den obern leeren Raum füllt man
mit der auszuziehenden Flüssigkeiten an, und passt in die Oeffnung des
Bodens eine Röhre: sie kann von Weissblech, Glas, Holz, oder ein lederner
Schlauch u. s. w. seyn." " Neben das obere Ende der Röhre stelle man ein
Gefäss mit der Ausziehungsflüssigkeit, so dass der Spiegel der Flüssigkeit
etwas niederer als das Ende der Röhre steht. Man senke jetzt einen Heber
in die Flüssigkeit und in die Röhre, ziehe durch die Röhre mit dem Munde
etwas Luft an indem man mit den Lippen, dem Daumen und Zeigefinger
das Eindringen derselben von aussen zu hindern strebt; die Flüssigkeit
wird sich heben und durch den Heber in die Röhre auslaufen, diese wird
selbst damit angefüllt, und so wirkt die Flüssigkeit drückend und lösend auf
die Substanz. Sie durchdringt sie und kommt, mit extractiven Theilen
beladen, anfangs oft von Syrupsdicke, vollkommen klar hervor." " Um
die Wirkung nach Belieben aufhören zu machen, bringt man einen Hahn an
die Röhre, den man schliesst, oder man verschliesst, nach weggenommenem
Heber das obere Ende der Röhre."

middle, in which the cylinder fits and around which he [it] rests." " In the opening in the bottom, a tube is fitted, which may be made of tinned iron [tin plate], glass, wood, leather, etc." " Near the upper end of the tube is placed a vessel containing the menstruum [liquid solvent], the surface of which must be somewhat lower than the end of the tube. A syphon is now introduced into the liquid and in the tube, air sucked through the tube, so that the liquid will commence to flow through the syphon into the tube, which is thereby filled. The column of menstruum [liquid] thus obtained acts pressing and dissolving upon the substance to be extracted. It penetrates it, and arrives, laden with the soluble matter contained in the substance, at the lower end of the apparatus, often in a syrupy consistence." " In order to control the apparatus, stop or continue the operation, the tube is provided with a cock which may be closed if necessary, or the upper end of tube may be closed after removing the syphon."

This court concurs in opinion with the Circuit Judge that the plaintiff's contrivance is not new, and, that if it were new, there would be grave doubt whether it involved any invention. 22 Fed. Rep. 841. As the plaintiff's contrivance had been anticipated in the German publication half a century before, it is unnecessary to decide whether, if new, it would have been patentable.

*Decree affirmed.*