## THACHER v. INHABITANTS OF TOWN OF FALMOUTH.

(District Court, D. Maine. June 27, 1916.)

No. 731.

1. PATENTS ☞328—VALIDITY—CONCRETE ARCH.

The Thacher patent, No. 617,615, for a concrete arch, is void for lack of invention; the arch of the patent in all its essential features having been previously described and illustrated in a printed publication in this country and in a foreign country.

2. PATENTS ☞68—VALIDITY—DESCRIPTION IN PRINTED PUBLICATION.

A printed publication, describing a device or structure, to be effective to invalidate a subsequent patent therefor, under Rev. St. § 4886 (Comp. St. 1913, § 9430), is anything which is printed and, without any injunction of secrecy, is distributed to any part of the public in any country. It is not essential that the device so described should have been in use, if the information conveyed to the public is sufficient to enable one skilled in the art to make and use it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 82, 83; Dec. Dig. ☞68.]

In Equity. Suit by Edwin Thacher against the Inhabitants of the Town of Falmouth. On final hearing. Decree for defendant.

A. Alexander Thomas, of New York City, for complainant.

S. W. Bates and David E. Moulton, both of Portland, Me., for defendant.

HALE, District Judge. [1] This suit in equity alleges infringement of the first and third claims of letters patent of the United States, No. 617,615, issued to the complainant, Edwin Thacher, January 10, 1899, and relating to concrete arches for bridges, or vault covering, or for spanning openings in building construction. The claims in suit are:

"1. The combination with abutments, and a concrete arch spanning the intervening space, of a series of metal bars, in pairs, one bar of each pair above the other, near the intrados and extrados of the arch, and extending well into the abutments, each bar of a pair being independent of the other, substantially as described."

"3. The combination with abutments, and a concrete arch spanning the space between the abutments, of a series of metal bars in pairs, one bar of each pair above the other bar, near the extrados and intrados of the arch, each bar of the pair being independent of the other, and one bar of each pair extending well into the abutment, substantially as described."

At the outset of the specification, the inventor says:

"My invention relates to concrete arches for bridges or vault covering, or for spanning openings in building construction; and it has for its object an improved arch structure in which iron or steel bars are imbedded in concrete near the outer and inner surfaces of the arch in such a manner as to assist the concrete in resisting the thrusts and bending moments to which the arch is subjected."

The inventor then proceeds to state in detail certain details of his construction:

"By my invention I provide, first, for an effective ·connection between the bars and the concrete, employing lugs, dowels, bolts, or rivets, which pass through the bars and project into the concrete, in which they are embedded, and thereby reinforce the adhesion between the metal and the concrete and prevent any end movement of the bar through the concrete, so that the complete crushing or shearing of the concrete must take place before a separation can be effected. Second, I employ bars of such a form that they can readily and cheaply be spliced if a greater length of bar is required than that which can be conveniently rolled or shipped. Third, I provide bars that can be manufactured at a small cost and as a standard or stock article and can be readily bent when used to the curve of the arch into which they are to enter. Consequently they can be stored or shipped in straight form. In ordinary structures and generally I arrange the bars in pairs, which are usually disposed so that one of the pair rests vertically above the other member of the pair; although I do not consider this manner of disposing of the bars as essential in all cases. The bars act as the flanges of beams to resist bending moments, whereas the shearing stresses, which are small, are taken by the concrete alone. In their normal condition the bars and the concrete act together, and the work done by each depends on its moment of inertia and modulus of elasticity; but if the concrete is defective and has a tendency to crack, the bars will greatly aid in resisting such tendency, and if a crack should take place the relation of the parts will be changed, and the bars will do the work of the concrete, and prevent the falling of the structure."

The defendants say that the claims in suit are invalid by reason of anticipation, and because, in view of the state of the prior art, they do not disclose invention. They allege also that, under a proper construction of this claim, no infringement is shown.

The patent has been sustained by the District Court of Maryland. Thacher v. Mayor and City Council of Baltimore (D. C.) 219 Fed. 909. The opinion of Judge Rose has been affirmed by the Circuit Court of Appeals for the Fourth Circuit. 230 Fed. 1022, 144 C. C. A. 659. It has been sustained in Thacher v. Transit Const. Co. (D. C.) 228 Fed. 905, where Judge Thomas, for the District Court in the Southern District of New York, held that the patent was valid, but was not infringed by the defendant company. The decision of Judge Thomas has been affirmed by the United States Circuit Court of Appeals for the Second Circuit, 234 Fed. 640, —— C. C. A. ——.

The defendants, however, have cited certain printed publications relating to examples of German Monier construction, which, it is contended, were not before the court in the cases to which I have referred, were not shown in the Patent Office, and are now for the first time brought before a court.

[2] The Revised Statutes of the United States, in section 4886, provide:

"Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof," etc. Comp. St. 1913, § 9430.

The defendants contend that the invention disclosed in the patent in suit was described in a printed publication in this and in a foreign country before the invention set forth in the patent.

An important publication, brought to the attention of the court, is the following: It is in evidence that in 1895 the Zeitschrift, of the Austrian Society of Engineers and Architects, published in a supplement the results of a series of tests made in full-sized arch bridges of certain well-known types, for the purpose of getting data for calculations. Among other publications was the description of a bridge 75 feet long, built on the Monier plan, with longitudinal wires about one-half inch in diameter and cross-wires about one-fourth inch in diameter. The proofs contain also cuts and descriptions of the bridge construction. This publication is shown to have been made some time before the application for this patent was filed. The complainant objects to the Zeitschrift as a publication. I find, however, that it was published in May, 1895, before the date of Thacher's invention; that it is the official journal of the Austrian Society of Engineers and Architects. I can see no reason why it should not be admitted as one of the proofs in the case.

A printed publication is anything which is printed, and, without any injunction of secrecy, is distributed to any part of the public in any country. Walker on Patents (4th Ed.) § 56. In Rosenwasser v. Spieth, 129 U. S. 47, 9 Sup. Ct. 229, 32 L. Ed. 628, the Supreme Court held that the device before it had been anticipated in a German publication half a century before. The publication in that case does not appear to have been anything more distinct or definite than the publication before us in the case at bar.

In Britton v. White Manufacturing Co. (C. C.) 61 Fed. 93, 95, for the purpose of showing the state of the art, Judge Townsend of the Circuit Court admitted in evidence a pamphlet purporting to be a number of a coachmakers' magazine, printed for general circulation, bound up with other numbers, and containing references to advertisements, with terms therefor.

I think the Zeitschrift must be held to disclose a construction having in combination all the elements of the patent in suit. It contains the abutments, the concrete arch, the series of pairs of bars, one bar of each pair near the intrados, and the other pair near the extrados; it shows each bar extending well into the abutments, after the completion of the abutments. I think there can be no doubt that the concrete work, into which the arch extends, must be held to be a part of the abutment after the construction is complete. Each bar of the pair is clearly independent of the other bar of the pair. It appears that the wires in use, under the system disclosed in this publication, were one-half inch in diameter. A wire of this character may well be called a bar; the reinforcement used in the construction described in the publication was something more than a wire netting.

We have before us the drawing of Figure 1 of the Thacher patent; also of the defendant's construction at page 4 of the record. Having these two drawings in mind, if we examine the drawing described by

the Zeitschrift publication, found at page 74 of the record, we shall see that this drawing appears to present the elements of the Thacher patent and of the defendant's construction, as I have just referred to them in detail.

FIG. 1 OF THE THACHER PATENT.

DEFENDANTS' BRIDGE.

TRANSVERSE SECTION OF ARCH RING
SHOWING REINFORCEMENT.

FALMOUTH BRIDGE
— 1907 —

Moniergewölbe

Fig. 7. Längenschnitt in der bergseitigen – Axe.

Der Gewölbe-Scheitel wurde bei der Ausführung nach Angabe der Firma um 0.044 m überhöht.

The learned counsel for the complainant urges that the exhibit illustrating the Zeitschrift disclosure shows merely an experiment, that the bridge shown in the drawing was never used for commercial purposes, and that, after the tests were made, it was torn down by placing predetermined loads upon the horizontal platform with which it was provided.

The court is now dealing with the question whether or not this complainant had invented or discovered any new and useful improvement, not described in any printed publication in this or any foreign country, before his invention or discovery thereof. It is the duty of the court to find whether or not the complainant had a right to a monopoly claimed by his patent; whether or not there was public knowledge, derived from a printed publication before his patent, of the improvement described in it. Upon this issue the Zeitschrift disclosure is offered in evidence, to show what knowledge the public had, from a printed publication, at the time of this patent. Under section 4886 of the Revised Statutes of the United States, patents and printed publications rest upon the same ground. Equitable Asphalt Maintenance Co. v. Parker Washington Co. (D. C.) 197 Fed. 927. The question in each is whether sufficient information is given to enable one skilled in the art to make and use the invention disclosed. It is not necessary to show that the device illustrated has been in use, if the publication is made and the information conveyed to the public is sufficient. As bearing on this question the publication is not invalidated by the fact that it was made for the purpose of giving the result of a series of tests. Courts have discredited works of experimentation by patentees, because experiments are made, not for the purpose of commercial use, but merely to see whether the inventors making the experiments will apply for a patent. What the courts have said upon this subject bears upon the question of public use, and does not apply to a case where the court is seeking to find whether an alleged improvement has been discovered in a printed publication. In Walker on Patents (4th Ed.) § 95 et seq., and cases cited thereunder, is found a discussion of the effect of experimental use as opposed to public use; but this has nothing to do in deciding whether a patentee's alleged invention "was described in any printed publication in this or any foreign country before his invention or discovery thereof."

The Zeitschrift device appears to belong to the German Monier system. It is not necessary, however, to decide to what system it belongs. In my opinion it discloses public knowledge of the improvement in question. In view of this disclosure, the proofs lead me to believe that the complainant did not discover anything new. He enlarged some of the longitudinal wires; he omitted some of the lateral wires; he made some other mechanical changes; by these means he thought he would be enabled to build a bridge more economically than it could be built under the Monier system. The result is shown in what the complainant has brought before the public. He testifies that he had read a paper produced by Frederick Von Emperger before the American Society of Civil Engineers, giving a sketch of the

Monier system. This was some time before Von Emperger produced his patent, No. 583,464 in 1897, to which reference has been made by the courts. The complainant testified that this paper started him upon the line of inventive thought which led up to this patent. The proofs do not induce the belief, however, that Mr. Thacher made any advance in the art. Variations of size of wires do not constitute invention; widening the spaces between the bars, to enable an engineer to use coarser concrete, is not invention; dispensing, in whole or in part, with unessential parts, is not invention; producing economy in bridge building, by consolidating numerous small bars into one large bar, cannot be said to be invention. These things are mechanical; they relate to good engineering; they do not disclose inventive thought. The courts have never had before them examples of the publications to which I have called attention. In the Maryland case the District Court did not refer to any publication like this. In speaking of the Monier invention Judge Rose said:

"In all the forms of his invention, and all the purposes to which he sought to apply it, a metallic grillage remained an essential element of the completed structure."

When we examine the samples of Monier construction brought before Judge Rose, we find that the elements of that construction consisted of a rude arch of reinforcing grillage distributed generally through the mass, as shown in the United States Monier patent. It appears, also, that a certain French patent, 77,165, was also shown in the Maryland case. This appears to show a Monier bridge having upper and lower networks arranged in the arch and extending into the abutments. When we examine the description of that patent, and the uncertain character of the drawing, it appears that, while three lines of reinforcement were shown extending longitudinally to the arch, there seems to be a grillage of wire reinforcement running vertically and horizontally through the mass, so that the whole arch apparently becomes a solid body of wire and concrete, and to present what Judge Rose has spoken of as a metallic grillage. There is nothing in what the court has said in that case which induces me to believe that any patent or publication was brought before it showing the essential elements shown in the Zeitschrift publication. It is clear that no such elements were before the court in the Transit Construction Case. In that case, in speaking for the Court of Appeals, Judge Chatfield points out the leading elements of Thacher's patent:

"The specification in the original Thacher application shows that the patentee was seeking to imbed his bars firmly, and that he contemplated for this purpose the use of bars with extensions or projections in order to allow better holding by the concrete. He also contemplated the possibility of using jointed or extension bars, so that they might be put in place in smaller sections and that the lower bar or the lower part of each bar could be covered with concrete first. He planned to have one of the bars near what is called the extrados of the arch and other near the intrados, thus having one follow the curve of the upper surface and the other the curve of the lower surface. He contemplated and has always used some means of holding the bars in position until the concrete was completely around them, and these means can be left in the concrete or removed as may be most convenient. But in all of this structure the patentee had in mind the idea which was not claimed by

Milliken (but was recognized by Von Emperger) of using two single rods or bars, which should not in any way obtain power to resist a strain or stress by direct truss-like connection with the other bar of the pair.

"This proved to be the ultimate patentable idea in the Thacher application and in this sense the patent seems to have properly been held valid."

When we examine the Zeitschrift publication, we find the same elements in this construction which the court points out to have been the leading elements in the Thacher patent. We find the idea of the two single rods or bars, one near the extrados and the other near the intrados; one following the curve of the upper surface of the arch and the other the curve of the lower surface. The purpose of these rods in the Thacher patent and in the Zeitschrift drawing is to resist the tensile stress, as has been pointed out by one of the experts. This was the leading feature of both structures. As I have already pointed out, we find all the other elements of the Thacher patent in this publication. I think it may fairly be said that there is no publication like the Zeitschrift before either of the courts which have heretofore passed upon the validity of this patent.

After a careful examination of the Zeitschrift publication, I am constrained to hold that Mr. Thacher's alleged invention in the patent in suit was described in a printed publication previous to his application for a patent, and that such printed publication was made in this country and in a foreign country. By reason of this publication I find that the patent in suit does not disclose invention; it is therefore invalid.

Having taken this view of the publication to which I have referred, it is not necessary to refer to other publications, although other publications are produced, illustrating the German Monier system.

In view of my conclusion as to the validity of the patent, it is not necessary to discuss the question of infringement.

The bill of complaint is dismissed, with costs. A decree may be drawn dismissing the bill. Let such decree be filed in court on or before July 25, 1916. The defendant may present corrections not later than July 31, 1916; the decree to be settled August 7, 1916, at 10 o'clock a. m.