**Application of John William BAYER.**

**Appeal No. 77-570.**

United States Court of Customs and Patent Appeals.

Feb. 2, 1978.

Joseph A. DeGrandi, Kenneth J. Meyers, Washington, D. C., Beveridge, DeGrandi, Kline & Lunsford, Washington, D. C., Charles S. Lynch, Toledo, Ohio, Attys. of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board), adhered to on reconsideration, affirming the rejection of claims 6, 8, 11–13, 20–25, and 28–37 of appellant's application serial No. 291,484, filed September 22, 1972, for "Transition Metal-Naphthyridine Chemical Complexes."[1] We reverse.

*Proceedings in the PTO*[2]

The sole reference relied upon by the examiner and the board is appellant's thesis entitled "Coordination Complexes of 2-methyl-5-hydroxy-1,8-naphthyridine," to which reference is made in the present application. The thesis was authored while appellant was a graduate student at the University of Toledo, and was submitted in partial fulfillment of the degree requirements for a Masters of Science in chemistry. The application states that the thesis is available in the university library.

1. Continuation of application serial No. 708,-791, filed February 28, 1968. Owens-Illinois, Inc. is the real party in interest.

2. Since we are here concerned only with a question of law, as will appear hereinafter, it is unnecessary to describe appellant's invention or to reproduce any of the appealed claims.

The examiner initially took the position that the thesis was available as a reference as of its date of receipt by the library,[3] which was asserted to be sometime in 1966 on the basis of evidence of record in the earlier filed application. Accordingly, the examiner rejected claims 12, 20, and 21 under 35 U.S.C. § 102(b) as anticipated by the subject matter of the thesis, which was held to constitute a "printed publication" within the meaning of the statute, thus barring appellant's right to a patent. The remaining claims on appeal were rejected under 35 U.S.C. § 103 as being "patentably indistinct" from compounds disclosed in the thesis.

Appellant questioned the propriety of the rejection, urging that mere receipt of the thesis by the library was insufficient to create a statutory bar. It has been appellant's position throughout these proceedings that in order to constitute a bar, the thesis must also have been catalogued and shelved, i. e., accessible to the public, more than one year prior to the effective filing date of the present application.

In an effort to show that his thesis was inaccessible to the public as of the "critical date," February 27, 1967, appellant submitted a declaration of Mary W. Hartsfield, Chief Catalogue Librarian at the University of Toledo, which (1) outlined the procedures followed for receiving, binding, cataloguing, and shelving student theses during 1966 and 1967, and (2) attested to the dates on which these procedures were performed with respect to appellant's thesis.

Hartsfield declared that the practice was to accumulate masters' theses in an office which was under her supervision and control, and to which only library employees had authorized access. The Catalogue Department staff catalogued the thesis, which involved collating, assigning call numbers, preparing temporary slips for the shelf list

catalogue[4] and temporary author slips for the public card catalogue. Thereafter, the theses were sent to the book bindery. The bound theses were returned to the Catalogue Department for further processing, after which they were transferred to the Circulation Department to be shelved in the library for use by the public. At that time the aforementioned temporary author slips were filed in the public card catalogue.

As for appellant's thesis, Hartsfield stated, on information and belief, that it was received between April 18 and May 1, 1966; that cataloguing functions were performed with respect thereto between January 1 and March 7, 1967; and that post-bindery processing was completed on March 7, 1967.[5]

Concerning the prerequisites for gaining access to appellant's thesis prior to the completion of processing, Hartsfield stated, inter alia, that one would have had to identify the thesis by author or title, or describe the subject matter thereof with particularity.

Finding appellant's arguments and the declaration unpersuasive, the examiner maintained the position that the thesis was a valid reference as of its receipt date, and further contended that appellant's thesis defense before a graduate committee comprised of appellant's adviser and two other faculty members, which occurred prior to the submission of the thesis to the library, constituted

> an announcement to the scientific community (at least of the University of Toledo) that such subject matter is available, its title and its author. * * * Such information would be sufficient to meet the requirements for access set forth in the Hartsfield declaration * *.

The examiner also asserted in his Answer that appellant should not be permitted to benefit from the university library's failure to perform, in a timely manner, its function of disseminating knowledge.

---

3. As authority, the examiner cited *In re De Grunigen*, 132 USPQ 152 (Bd.App.1958), and *Gullicksen v. Halberg v. Edgerton v. Scott*, 75 USPQ 252 (Bd.App.1937).

4. The shelf list was for internal use by the Catalogue Department.

5. March 7, 1967 appears on the shelf list card in evidence, indicating the date on which processing of appellant's thesis was completed. As mentioned previously, it was not until processing was completed that the thesis was shelved for use by the public.

Although the board affirmed the rejection, it did not adopt the theory that the thesis was available as a reference as of its date of receipt by the library. The board apparently felt that the examiner had misconstrued the authorities relied upon to support that theory, noting that a significant factual distinction between the present case and those cited by the examiner was that the thesis in the present case was unshelved as of the critical date in question, whereas the theses in the cited cases were found on the library shelves.

The board did agree, however, that appellant's thesis defense

> constituted, at least to appellant's graduate committee, an announcement of the availability of such subject matter, its title and its author. People having such knowledge, according to the declaration of * * * Hartsfield, could gain access to a copy of the * * * Thesis in question. Since accessibility to any part of the public is sufficient to complete publication, appellant's thesis was published under 35 USC 102(b) when it was submitted to the Library. *Pickering v. Holman*, 459 F.2d 403, 173 USPQ 583 [(C.A. 9 1972)]; *I. C. E. Corp. v. Armco Steel Corp.*, 250 F.Supp. 738, 148 USPQ 537 [(S.D.N.Y.1966)].

The board's opinion following appellant's request for reconsideration further explicated its original holding as follows:

> [T]he crucial fact leading to our decision is that the members of appellant's graduate committee could have located his thesis in the library where it was available to them on request. Furthermore, in the absence of any indication of a continued obligation of confidentiality,[6] the members of the graduate committee could

have transmitted the information necessary for obtaining the thesis to any number of other people having an interest in its subject matter. In this regard we note that the Court of Customs and Patent Appeals in *In re Tenney*, 45 CCPA 894, 254 F.2d 619, 117 USPQ 348 [(1958)], did not require that it be shown that any number of people actually saw the publication in question but only that there be a probability of such an occurrence * *. Similarly *Pickering v. Holman*, 450 [sic, 459] F.2d 403, 173 USPQ 583 [(C.A. 9 1972)], did not require disclosure which assured wide public access but only "disclosure by way of a medium *capable of providing* wide public access [emphasis by board]." Thus under the fact situation here presented it can be contended that the unbound, uncatalogued and unshelved Master's thesis stored for a period of time in a restricted area of a library was capable of providing wide public access to the information it contained.

### Issue

Appellant does not dispute that his thesis is printed.[7] Accordingly, the dispositive issue is whether appellant's uncatalogued, unshelved thesis, by virtue of its accessibility to the graduate committee, is a "publication" within the meaning of 35 U.S.C. § 102(b).[8]

### OPINION

It is well settled that in determining whether a printed document constitutes a publication bar under 35 U.S.C. § 102(b) the touchstone is public accessibility. This follows logically from the theory that the patent grant is in the nature of a contract between the inventor and the public. Hence, if knowledge of the invention is

---

6. The board had earlier expressed the view that
   > when the thesis is being circulated to members of the committee for their approval by the degree candidate, they are under at least an implied obligation of confidentiality. * * However, * * * once the thesis had been approved * * * and submitted to the library, the situation has changed.

7. At oral argument appellant's counsel indicated that the library's copies of the thesis were produced by a photo-offset method.

8. It is conceded by appellant that if his thesis is available as a reference, claims 6, 8, 11–13, 20, and 21 are anticipated. Appellant does not, however, acquiesce in the rejection of claims 22–25 and 28–37 under 35 U.S.C. § 103. But *since appellant failed to argue separately the patentability of any claims before the PTO*, all of the claims will stand or fall together in accordance with the resolution of the issue set forth above.

already accessible to the public there is a failure of consideration and no patent may be granted. *In re Tenney*, 254 F.2d 619, 45 CCPA 894, 117 USPQ 348 (1958).[9]

We are here concerned with a question of degree, namely, what degree of public accessibility is required for a printed document to qualify as a publication under the statute. Appellant maintains that accessibility to the general public is required, whereas the board expressed the view that accessibility to any part of the public will suffice. Authority can be mustered to support either position.

The essential requisites for publication set forth in 1 W. Robinson, The Law of Patents § 325 at 446 (1890), insofar as are here pertinent, are that the publication be: "(1) A work of public character intended for general use; (2) within reach of the public * * *." With respect to the first of these requisites, it is stated:

> A work of public character is such a book or other printed document as is intended and employed for the communication of ideas to persons in general, as distinguished from particular individuals. Private communications, although printed, do not come under this description, whether designed for the use of single persons or of a few restricted groups of persons.

Id. § 326 at 447.

That the publication be within the reach of the public is amplified as follows:

> [I]t must have been actually published in such a manner that any one who chooses may avail himself of the information it contains.

Id. § 327 at 448.

Of similar import is the following excerpt from *Popeil Brothers, Inc. v. Schick Electric, Inc.*, 494 F.2d 162, 166, 181 USPQ 482, 485 (C.A. 7 1974):

To constitute a printed publication for purposes of the publication bar, all that is required is that the document in question be printed and so disseminated as to provide wide public access to it.

Needless to say, appellant relies on the foregoing authorities to support his position.

The board's holding, in essence, is founded on the proposition enunciated in *Pickering v. Holman*, 459 F.2d 403, 407, 173 USPQ 583, 585 (C.A. 9 1972) (citing 1 A. Deller, Deller's Walker on Patents § 60 at 272 (2d ed. 1964)) that "[a]nything that is printed and made accessible to any part of the public is a printed publication." However, a review of the cases [10] cited in Deller's as standing for that proposition reveals that the board's reliance thereon is misplaced.

The printed documents relied upon to show patent invalidity in *Imperial Glass Co. v. A. H. Heisey & Co.*, supra note 10, were glass manufacturers' catalogues. The trial court refused to consider the catalogues, thinking that they were not publications within the meaning of the statute because they were not found in a library. The appellate court held that to be error, reasoning that "manufacturer's catalogues so circulated are more effective in spreading information among persons skilled in that art than if the same catalogues were only on file in some public library." *Id.* at 269. This rationale was followed in *Jockmus v. Leviton*, 28 F.2d 812, 813–14 (C.A. 2 1928), wherein it was stated:

> On principle we are entirely in accord, for the purpose of the statute is apparent, and we ought to effect it so far as its language will allow. While it is true that the phrase, "printed publication," presup-

---

9. In *Tenney* it was held that a single microfilm copy of the specification of a German patent application on file in the Library of Congress was not a "printed publication" under 35 U.S.C. § 102(b).

10. *Rosenwasser v. Speith*, 129 U.S. 47, 9 S.Ct. 229, 32 L.Ed. 628 (1889); *Imperial Glass Co. v. A. H. Heisey & Co.*, 294 F. 267 (C.A. 6 1923);

*Camp Bros. & Co. v. Portable Wagon Dump & Elevator Co.*, 251 F. 603 (C.A. 7 1917), *cert. denied*, 248 U.S. 572, 39 S.Ct. 11, 63 L.Ed. 427 (1918); *Interchemical Corp. v. Sinclair & Carroll Co.*, 50 F.Supp. 881 (D.C.N.Y.1943), *rev'd on other grounds*, 144 F.2d 842 (C.A. 2 1944), *rev'd on other grounds*, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945).

poses enough currency to make the work part of the possessions of the art, it demands no more. A single copy in a library, though more permanent, is far less fitted to inform the craft than a catalogue freely circulated, however ephemeral its existence; for the catalogue goes direct to those whose interests make them likely to observe and remember whatever it may contain that is new and useful.

From the foregoing authorities, we think it apparent that a printed document may qualify as a "publication" under 35 U.S.C. § 102(b), notwithstanding that accessibility thereto is restricted to a "part of the public," so long as accessibility is sufficient "to raise a presumption that the public concerned with the art would know of [the invention]." *Camp Bros. & Co. v. Portable Wagon Dump & Elevator Co.*, supra note 10, at 607. Cf. *Garrett Corp. v. United States*, 422 F.2d 874, 190 Ct.Cl. 858, *cert. denied*, 400 U.S. 951, 91 S.Ct. 242, 27 L.Ed.2d 257 (1970). Accessibility to appellant's thesis by the three members of the graduate committee under the circumstances of the present case does not raise such a presumption.[11]

Moreover, since appellant's thesis could have been located in the university library only by one having been informed of its existence by the faculty committee, and not by means of the customary research aids available in the library, the "probability of public knowledge of the contents of the [thesis]," *In re Tenney*, supra, 254 F.2d at 626, 45 CCPA at 902, 117 USPQ at 354, was virtually nil.

The board's opinion does not specifically address the examiner's argument that the library's inefficiency should not redound to appellant's benefit, and the solicitor has re-asserted it in his brief, paraphrasing *Alexander Milburn Co. v. Davis Bournonville Co.*, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926), thus, "the delays of the university library ought not to cut down the effect of what has been done[;] and appellant had taken steps that would make his thesis public as soon as the university library did its work." However, this argument overlooks conceptual differences between 35 U.S.C. § 102(b) and 35 U.S.C. § 102(e),[12] the latter providing that:

> A person shall be entitled to a patent unless—
>
> \*     \*     \*     \*     \*     \*
>
> (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent \* \* \*.

The concept underlying 35 U.S.C. § 102(e) is that a complete description of an applicant's invention in an earlier filed application of another, which subsequently matures into a patent, constitutes prima facie evidence that the applicant is *not the first inventor* of the invention in controversy. The Supreme Court in *Milburn* was of the opinion that administrative delays in the Patent Office should not detract from the anticipatory effect of such evidence.[13]

The publication bar of 35 U.S.C. § 102(b), as mentioned previously, operates upon the theory that the *invention in controversy is in the public domain*, and once there, is no longer patentable by anyone. The date on which the public actually gained access to the invention by means of the publication is the focus of inquiry. As stated in *In re Tenney*, supra, 254 F.2d at 626, 45 CCPA at 902, 117 USPQ at 354, "the public is not to be charged with knowledge of a subject

---

11. Although the board stated that members of the graduate committee could have transmitted the information necessary for obtaining the thesis to others, the record is devoid of any enlightenment concerning that possibility.

12. 35 U.S.C. § 102(e), as the Reviser's Note on § 102 of the Patent Act of 1952 states, enacts the rule of *Alexander Milburn Co. v. Davis-Bournonville, Co.*, supra.

13. The rationale of *Milburn* is manifestly inapplicable to the case at bar because the thesis, being appellant's own work product, cannot provide any evidence whatever that appellant was not the first inventor of the subject matter of the appealed claims.

until such time as it is available to it." Accordingly, under 35 U.S.C. § 102(b), delays within a university library, or within any other organization responsible for the publication of printed documents, are of utmost significance because public access to the document is thereby deferred, thus postponing the commencement of the one year time bar.

The solicitor reiterates a second point raised in the examiner's Answer, although in a different context, arguing that "intent that the fruits of research be available to the public is determinative of publication under the statute * * *." *Hamilton Laboratories, Inc. v. Massengill*, 111 F.2d 584, 585, 45 USPQ 594, 595 (C.A. 6), *cert. denied*, 311 U.S. 688, 61 S.Ct. 65, 85 L.Ed. 444 (1940). The solicitor's contention is that at the time appellant applied for a patent he no longer had any consideration to offer because the invention was already possessed by the public as partial consideration for the appellant's degree.

Aside from the fact that the language quoted from *Hamilton Laboratories* was, in the court's words, "not determinative of ultimate issues in the present case," we think that, as an expression of the applicable law concerning printed publications, it is ill-conceived, and we decline to follow it.

The general rule is that intent, being a state of mind, is rarely susceptible of direct proof, but must ordinarily be inferred from circumstantial evidence. In our view, the evidence of record bearing most prominently on appellant's intent is the fact that a patent application was indeed filed. This fact belies any intent on appellant's part that the "fruits of his research" were to be available to the public.

We have carefully reviewed the board's decision and the solicitor's arguments in support thereof, however, we are unconvinced that appellant's thesis defense before the graduate committee in its official capacity as arbiter of appellant's entitlement to a master's degree was somehow

transmuted into a patent-defeating publication merely by depositing the thesis in the university library where it remained uncatalogued and unshelved as of the critical date in question. We believe that the board has attempted to draw too fine a line of distinction here, and in so doing, has unjustifiably denied appellant's claims.

In view of the foregoing, we conclude that the board erred in holding that appellant's thesis constituted a "publication" within the meaning of 35 U.S.C. § 102(b).

*REVERSED.*