**In re Leo M. HALL.**

**Appeal No. 85–2338.**

United States Court of Appeals,
Federal Circuit.

Jan. 16, 1986.

John F. Faro, American Hosp. Supply Corp., Miami, Fla., argued, for appellant. With him on brief was Boris Haskell, Arlington, Va.

Fred E. McKelvey, Deputy Sol., U.S. Patent and Trademark Office, Arlington, Va., argued, for appellee. With him on brief were Joseph F. Nakamura, Sol. and Michael L. Gellner, Asst. Sol.

---

*Circuit Judge Kashiwa retired on January 7, 1986. Prior to his retirement, he participated in

Before BALDWIN, Circuit Judge, NICHOLS, Senior Circuit Judge, and KASHIWA, Circuit Judge.*

BALDWIN, Circuit Judge.

This is an appeal from the decision of the U.S. Patent and Trademark Office's (PTO) former Board of Appeals, adhered to on reconsideration by the Board of Patent Appeals and Interferences (board), sustaining the final rejection of claims 1–25 of reissue Application No. 343,922, filed January 29, 1982, based principally on a "printed publication" bar under 35 U.S.C. §§ 102(b). The reference is a doctoral thesis. Because appellant concedes that his claims are unpatentable if the thesis is available as a "printed publication" more than one year prior to the application's effective filing date of February 27, 1979, the only issue is whether the thesis is available as such a printed publication. On the record before us, we affirm the board's decision.

### Background

A protest was filed during prosecution of appellant's reissue application which included in an appendix a copy of the dissertation "1,4-*a*–Glucanglukohydrolase ein amylotylisches Enzym ..." by Peter Foldi (Foldi thesis or dissertation). The record indicates that in September 1977, Foldi submitted his dissertation to the Department of Chemistry and Pharmacy at Freiburg University in the Federal Republic of Germany, and that Foldi was awarded a doctorate degree on November 2, 1977.

Certain affidavits from Dr. Erich Will, who is the director and manager of the Loan Department of the Library of Freiburg University, have been relied upon by the examiner and the board in reaching their decisions. One document, styled a "Declaration" and signed by Dr. Will, states that:

[I]n November 1977 copies of the dissertation FOLDI ... were received in the library of Freiburg University, and in ...

the consideration and decision of this case, and joined in this opinion.

December 1977 copies of the said dissertation were freely made available to the faculty and student body of Freiburg University as well as to the general public.

In an August 28, 1981 letter responding to an inquiry from a German corporation, Dr. Will said that the Freiburg University library was able to make the Foldi dissertation "available to our readers as early as 1977."

The examiner made a final rejection of the application claims. He said: "On the basis of the instant record it is reasonable to assume that the Foldi thesis was available (accessible) prior to February 27, 1979." He also pointed out that there was no evidence to the contrary and asked the appellant to state his "knowledge of any inquiry which may have been made regarding 'availability' beyond that presently referred to in the record." Appellant did not respond.

By letter, the PTO's Scientific Library asked Dr. Will whether the Foldi dissertation was made available to the public by being cataloged and placed in the main collection. Dr. Will replied in an October 20, 1983 letter, as translated:

> Our dissertations, thus also the Foldi dissertation, are indexed in a special dissertations catalogue, which is part of the general users' catalogue. In the stacks they are likewise set apart in a special dissertation section, which is part of the general stacks.

In response to a further inquiry by the PTO's Scientific Library requesting (1) the exact date of indexing and cataloging of the Foldi dissertation or (2) "the time such procedures normally take," Dr. Will replied in a June 18, 1984 letter:

> The Library copies of the Foldi dissertation were sent to us by the faculty on November 4, 1977. Accordingly, the dissertation most probably was available for general use toward the beginning of the month of December, 1977.

The board held that the unrebutted evidence of record was sufficient to conclude that the Foldi dissertation had an effective date as prior art more than one year prior to the filing date of the appellant's initial application. In rejecting appellant's argument that the evidence was not sufficient to establish a specific date when the dissertation became publicly available, the board said:

> We rely on the librarian's affidavit of express facts regarding the *specific* dissertation of interest and his description of the routine treatment of dissertations in general, in the ordinary course of business in his library.

On appeal, appellant raises two arguments: (1) the § 102(b) "printed publication" bar requires that the publication be accessible to the interested public, but there is no evidence that the dissertation was properly indexed in the library catalog prior to the critical date; and (2) even if the Foldi thesis were cataloged prior to the critical date, the presence of a single cataloged thesis in one university library does not constitute sufficient accessibility of the publication's teachings to those interested in the art exercising reasonable diligence.

OPINION ·

The "printed publication" bar is found in 35 U.S.C. § 102:

> A person shall be entitled to a patent unless—
>
>   *     *     *     *     *     *
>
> (b) the invention was patented or described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for patent in the United States....

The bar is grounded on the principle that once an invention is in the public domain, it is no longer patentable by anyone. *In re Bayer,* 568 F.2d 1357, 1361, 196 USPQ 670, 675 (CCPA 1978).

The statutory phrase "printed publication" has been interpreted to give effect to ongoing advances in the technologies of data storage, retrieval, and dissemination. *In re Wyer,* 655 F.2d 221, 226, 210 USPQ 790, 794 (CCPA 1981). Because there are many ways in which a reference may be

disseminated to the interested public, "public accessibility" has been called the touchstone in determining whether a reference constitutes a "printed publication" bar under 35 U.S.C. § 102(b). *See, e.g., In re Bayer*, 568 F.2d at 1359, 196 USPQ at 673; *In re Wyer*, 655 F.2d at 224, 210 USPQ at 792. The § 102 publication bar is a legal determination based on underlying fact issues, and therefore must be approached on a case-by-case basis. *See id.* at 227, 210 USPQ at 795. The proponent of the publication bar must show that prior to the critical date the reference was sufficiently accessible, at least to the public interested in the art, so that such a one by examining the reference could make the claimed invention without further research or experimentation. *See In re Donohue*, 766 F.2d 531, 533, 226 USPQ 619, 621 (Fed.Cir.1985); *In re Bayer*, 568 F.2d at 1361, 196 USPQ at 674; *In re Wyer*, 655 F.2d at 226–27, 210 USPQ at 794–95.

Relying on *In re Bayer*, appellant argues that the Foldi thesis was not shown to be accessible because Dr. Will's affidavits do not say when the thesis was indexed in the library catalog and do not chronicle the procedures for receiving and processing a thesis in the library.

As the board pointed out in its decision, the facts in *Bayer* differ from those here. Bayer, who was himself the author of the dissertation relied upon by the PTO, submitted a declaration from the university librarian which detailed the library's procedures for receiving, cataloging, and shelving of theses and attested to the relevant dates that Bayer's thesis was processed. The evidence showed that cataloging and shelving thesis copies routinely took many months from the time they were first received from the faculty and that during the interim the theses were accumulated in a private library office accessible only to library employees. In particular, processing of Bayer's thesis was shown to have been completed after the critical date.

On those facts the CCPA held that Bayer's thesis was not sufficiently accessible and could not give rise to the § 102(b) publication bar. But the court did not hold, as appellant would have it, that accessibility can only be shown by evidence establishing a *specific* date of cataloging and shelving before the critical date. While such evidence would be desirable, in lending greater certainty to the accessibility determination, the realities of routine business practice counsel against requiring such evidence. The probative value of routine business practice to show the performance of a specific act has long been recognized. *See, e.g.,* 1 Wigmore, *Evidence* § 92 (1940); rule 406, Fed.R.Evid.; 2 Weinstein, *Evidence* §§ 406[01], 406[03] (1981). Therefore, we conclude that competent evidence of the general library practice may be relied upon to establish an approximate time when a thesis became accessible.

■ In the present case, Dr. Will's affidavits give a rather general library procedure as to indexing, cataloging, and shelving of theses. Although no specific dates are cited (except that the thesis was received on November 4, 1977), Dr. Will's affidavits consistently maintain that inasmuch as the Foldi dissertation was received by the library in early November 1977, the dissertation "most probably was available for general use toward the beginning of the month of December, 1977." The only reasonable interpretation of the affidavits is that Dr. Will was relying on his library's general practice for indexing, cataloging, and shelving theses in estimating the time it would have taken to make the dissertation available to the interested public. Dr. Will's affidavits are competent evidence, and in these circumstances, persuasive evidence that the Foldi dissertation was accessible prior to the critical date. Reliance on an approximation found in the affidavits such as "toward the beginning of the month of December, 1977" works no injustice here because the critical date, February 27, 1978, is some two and one half months later. Moreover, it is undisputed that appellant proffered no rebuttal evidence.

■ Based on what we have already said concerning "public accessibility," and noting that the determination rests on the

facts of each case, we reject appellant's legal argument that a single cataloged thesis in one university library does not constitute sufficient accessibility to those interested in the art exercising reasonable diligence.

We agree with the board that the evidence of record consisting of Dr. Will's affidavits establishes a prima facie case for unpatentability of the claims under the § 102(b) publication bar. It is a case which stands unrebutted.

Accordingly, the board's decision sustaining the rejection of appellant's claims is *affirmed*.

AFFIRMED