LINN, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s decision to affirm the district court’s grant of summary judgment of invalidity of the patents in suit. Because the district court erred in holding that the patent application that issued as Canadian Patent No. 1,158,119 (“the ’119 application”) was a “printed publication” under 35 U.S.C. § 102(b), I would vacate the district court’s summary judgment of invalidity and remand for further proceedings.
The majority distinguishes In re Cronyn, 890 F.2d 1158 (Fed.Cir.1989) by concluding that the issued ’119 patent serves as an index to the ’119 application. Ante at 1379. (“[I]t does not matter whether the ’119 application was catalogued or indexed ‘in a meaningful way’ because the [issued] T19 patent was indexed....”). The majority elaborates that the issued ’119 patent is even more of a road-map to the application file than an abstract, inferring that the issued patent can take the place of a classified and indexed abstract, and, relying on our precedent in In re Wyer, 655 F.2d 221 (C.C.P.A.1981), contends that the indexed patent makes the ’119 application “publicly accessible.” Ante at 1379.
In my opinion, it is not entirely sound to view the issued 119 patent as a roadmap to the underlying file history. An abstract, which is similar in many respects to a library index card, is a brief statement of the contents of something else; ie., the more extensive text to which it refers. It is intended to serve as a tool to steer researchers to the content of a larger and more comprehensive work. The abstract contained in an issued patent, for example, is a summary of the technical information contained in the specification. On the other hand, the printed text of an issued patent — including the abstract, written description, and claims — is not necessarily looked to as a summary or index of the underlying file history. While it is commonplace for parties to examine patent file histories for guidance on matters of claim interpretation, surrender, estoppel, disclaimer, or disavowal, researchers normally expect the text of printed patents to correspond to and be coextensive with the applications from which they have been issued. In that sense, the text of an issued patent does not generally serve to guide researchers to the file history for a more expansive disclosure of the described invention, and it certainly does not lead researchers to the file history for disclosure of subject matter not described in the issued text.
*1381 Moreover, even if an issued patent may be considered a form of index to the underlying file history, there is nothing in the text of the issued 119 patent to suggest that a disclosure of structure for implementing the “thawing frozen ground” use will be found in the underlying 119 application. The fact that an additional drawing, disclosing additional structure, is present in the application file is a matter of sheer happenstance nowhere indicated in the issued patent. For this reason, it is my view that, as in Cronyn, the anticipatory drawings at issue in this case are “not accessible to the public because they have not been cataloged or indexed in a meaningful way.” See Cronyn, 890 F.2d at 1161.
Public accessibility has been the touchstone by which a prior art reference satisfies the purposes of 35 U.S.C. § 102(b). See In re Wyer, 655 F.2d at 226 (stating that the entire purpose of the “printed publication” bar was to “prevent withdrawal” of disclosures “already in the possession of the public” by the issuance of a patent). In Klopfenstein, this court discussed that the requirement of public accessibility can be satisfied under a variety of conditions, including when there has been a meaningful distribution, indexing, or display of the material to the public interested in the art. See generally In re Klopfenstein, 380 F.3d 1345 (Fed.Cir.2004). In Klopfenstein, we held that a reference was made sufficiently publicly accessible because, despite that it was not indexed and copies were not distributed to the public, it was prominently displayed for several days to a wide variety of interested viewers who were free to take notes or photographs, and copying would have been a simple undertaking. Id. at 1350. In this case, in addition to not being meaningfully indexed, as discussed above, no copies were known to have been made or distributed during the critical period, and the T19 application was available for viewing only at the Canadian Patent Office in Hull, Quebec.
For the foregoing reasons, it is my view that the limited reference in the issued ’119 patent to “thawing frozen ground” did not put the public in possession of the canceled drawings in the ’119 application. Because the district court erroneously determined that the 119 application, including the canceled drawings, was a “printed publication,” I would vacate the district court’s grant of summary judgment and remand.