FRICTION DIVISION PRODUCTS,
INC., Plaintiff,

v.

E.I. DuPONT DE NEMOURS &
COMPANY, INCORPORATED,
Defendant.

Civ. A. No. 84–218–JRR.

United States District Court,
D. Delaware.

Jan. 9, 1987.

Samuel V. Abramo, of Abramo & Abramo, Wilmington, Del. (Steven Kreiss, of Wigman & Cohen, Arlington, Va., John S. Child, of Synnesvedt & Lechner, Philadelphia, Pa., and John S. Munday, Paoli, Pa., of counsel), for plaintiff.

Jack B. Blumenfeld, of Morris, Nichols, Arsht, & Tunnell, Wilmington, Del. (Lawrence F. Scinto, and Lawrence A. Stahl, of Fitzpatrick, Cella, Harper & Scinto, New York City, and Robert C. Kline, and Earl L. Handley, of E.I. DuPont de Nemours and Co., Wilmington, Del., of counsel), for defendant.

## OPINION

ROTH, District Judge.

This is a patent infringement action filed by plaintiff Friction Division Products ("FDP") against defendant E.I. DuPont de Nemours & Company ("DuPont"). Plaintiff, FDP, charges DuPont with infringing and inducing others to infringe United States Patent No. 4,374,211 ("'211 Patent"). DuPont has denied the allegations of patent infringement and inducement to infringe and has counterclaimed seeking a declaratory judgment that FDP's patent is

invalid, unenforceable and has not been infringed.

Before the Court is defendant's motion for summary judgment and plaintiff's motions under (1) Fed.R.Civ.P. 26(c)(8), for a simultaneous exchange of assertions of prior art and dates of invention; (2) Fed.R.Civ.P. 11, 26(g) and 37 to strike portions of defendant's summary judgment brief, preclude the introduction of evidence at trial in support of defendant's prior invention and for sanctions and attorney's fees; and (3) Fed.R.Civ.P. 37(b)(2)(D) and 45(g) to compel third-party Carlisle Corporation ("Carlisle") to produce additional technical information and for costs and attorney's fees. Upon reviewing the parties' briefs and presentations at oral argument, the Court grants defendant's motion for summary judgment in connection with the generic and organic claims of the '211 patent but denies the motion as to the semi-metallic claims. We also deny plaintiff's discovery motions under Rule 26(c)(8) and Rules 11, 26(g) and 37 as well as their motion to compel Carlisle to produce additional information.

## I. *Background.*

FDP manufactures and sells friction products such as automotive disc brake pads and drum brake linings. It has been one of the larger suppliers of original equipment brakes and is also one of the largest users of asbestos fibers for those products. Defendant DuPont is the sole United States supplier of an important ingredient in the '211 patent, an aramid pulp which defendant sells under the trademark "Kevlar". DuPont does not commercially manufacture or sell friction products but does sell Kevlar in its various forms to customers such as FDP who use it in brakes and other friction products as a substitute for asbestos.

For many years, asbestos fiber was the mainstay of the friction products industry. Asbestos fiber had the effect of greatly adding to the tensile strength and resistance to shear of composite friction elements. It was also relatively inexpensive and easily preformed.[1] It served both as a reinforcing material and as a filler. Virtually all disc brake pads, truck brakes, clutches and drum brake linings included asbestos fiber.

In the 1970's the health hazards associated with the use of asbestos fiber became obvious, and the search for a replacement for asbestos in friction products began in earnest. In response to this need, DuPont turned its research efforts to developing the use of Kevlar fiber as a replacement for asbestos in friction materials. However, DuPont, and the friction industry in general, had difficulties processing the cut Kevlar fiber. The main problem was the poor dispersion of the Kevlar in the mix which often resulted in preforms with insufficient structural integrity or green strength. The cut fibers had broomlike ends which tended to cling to one another causing the fiber to ball up during the mixing operation. Because of the inherent toughness of the Kevlar, this balled up fiber could not then be broken apart, and the preform would not hold its shape.

As a result of these mixing problems, DuPont developed Kevlar pulp. Kevlar pulp is a very short, highly fibrillated form of Kevlar fiber. The pulp is finer and shorter than the cut forms of Kevlar fiber and has many very fine fibrils or subfibers attached. The use of Kevlar pulp was found to eliminate the clumping problem that occurred when Kevlar fibers were mixed.

Because Kevlar pulp did not clump, the preforms had greatly improved structural integrity, similar to preforms in which asbestos had been used. This strength in the preforms permitted friction product manufacturers to use the same techniques for Kevlar pulp compositions which had been used for asbestos compositions. The cost savings resulting from this use of existing equipment are significant.

FDP claims that the discovery of the improved structural integrity resulting

---

**1.** The preforms are the intermediate products in the manufacture of the friction products which result from the mix and are used to form the shape and size of the end product. See, U.S. Patent No. 4,374,211.

from the use of the Kevlar pulp in the composition led it to file its application for the '211 patent on September 25, 1981. The '211 patent includes 40 claims which are grouped into several different categories:

(1) generic claims (Nos. 1–4, 18–26, 30–34 and 38–40);

(2) organic non-asbestos claims (Nos. 8–12, 28 and 36);

(3) semi-metallic claims (Nos. 5–7, 27 and 35); and

(4) hydrocarbon cold forming claims (Nos. 13–17, 29 and 37).[2]

In this action, FDP alleges infringement of the generic, organic non-asbestos, and semi-metallic claims. FDP asserts that the principal teaching of the '211 patent is that, when Kevlar pulp is used in making non-asbetos friction products, the preform will have good structural integrity. DuPont contends that FDP has merely pointed out an inherent property of a known composition, which is not patentable.

It is undisputed that DuPont first developed Kevlar pulp and introduced it to FDP by supplying them with samples. On November 1, 1979, Drs. Loken and Merriman of DuPont visited FDP and met with both named inventors of the '211 patent, Philip Dougherty and John Gallagher. At that meeting Loken and Merriman made presentations to FDP on Kevlar pulp and recommended that they use it in their friction process. FDP records indicate that on that same day, an FDP employee prepared a mixture of a nonasbestos friction material composition, using 1.4 parts Kevlar pulp. The mixture was compressed into preforms, and the preforms were cured to form a friction element.

Based on this preliminary test using Kevlar pulp, FDP has claimed a November 1, 1979, invention date for the generic and organic non-asbestos claims of the '211 patent. After twice moving the dates of its semi-metallic invention, now back to a period more than one year prior to the original date, FDP claims an undetermined date between March 1980 and August 1980 for

the invention of the semi-metallic claims. FDP's basis for its latest date change, one day after DuPont's summary judgment motion was filed, is not completely clear to the Court. However, pursuant to this Court's Order of October 3, 1986, permitting the amendment of the date, we have accepted plaintiff's latest alleged invention dates for the purpose of ruling on the motion for summary judgment.

DuPont claims that two research publications, "Asbestos Free Brakes and Dry Clutches Reinforced with Kevlar Aramid Fiber", by Dr. Loken of DuPont ("Loken Paper") and "Manufacture and Applications of Pulp of Kevlar Aramid Fiber", a DuPont article ("RDP article"), anticipate the generic and organic non-asbestos claims of the '211 patent. DuPont also claims that its own prior work and that of Griffin Wheel Company are prior inventions of the generic, organic and semi-metallic claims of the patent, while Nuturn's prior manufacture of semi-metallic brakes containing Kevlar pulp invalidates the semi-metallic claims of the '211 patent.

FDP, on the other hand, claims that the two DuPont publications do not anticipate or teach anything more than the prior art, and that, even if the Loken paper did anticipate the claims of the '211 patent, it was not published and, therefore, could not be a prior publication as the statute requires. In regard to DuPont's assertions of anticipation and prior invention by DuPont, Griffin Wheel and Nuturn, FDP simply asserts that the work of these companies did not anticipate FDP's work and that they were all abandoned, suppressed or concealed, pursuant to 35 U.S.C. § 102(g).

## II. *Discussion.*

In order to better clarify the issues presented in defendant's summary judgment motion, we will first address plaintiff's three outstanding discovery motions.

### A. *Fed.R.Civ.P. 26(c)(8).*

In its motion under Fed.R.Civ.P. 26(c)(8), FDP proposes simultaneous filing of doc-

---

**2.** The hydrocarbon claims are not at issue in this case and will not be discussed.

uments in sealed envelopes whereby FDP would reveal its "final" invention dates on the patent claims and DuPont would reveal all assertions of prior art. According to FDP, such an exchange would then obviate the need for consideration at trial of any previously disclosed invention dates or assertions of prior art. Rule 26(c) states in part:

> Upon motion by a party or by the person from whom discovery is sought, and *for good cause shown,* the court in which the action is pending ... may make any order which justice requires *to protect a party ... from annoyance, embarrassment, oppression, or undue burden or expense,* including one or more of the following: ... (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court. (Emphasis added.)

FDP's motion under this rule fails to focus on the purpose of Rule 26(c) and its relationship to the facts of this case. The rule states specifically that the Court may grant such a motion where *good cause* is shown. This is also pointed out in one of the very cases that FDP cites in support of its motion. *Cleo Wrap Corp. v. Elsner Engineering Works, Inc.,* 59 F.R.D. 386, 390, 176 U.S.P.Q. 266, 268 (M.D.Pa.1972). The Court fails to see what good cause exists for granting a motion for simultaneous exchange of information when there have been previous court orders requiring the disclosure of DuPont's prior art and FDP's invention dates. FDP's request completely ignores the fact that they have been under court order to supply their invention dates. There is no good cause shown for this Court to go to the lengths of substituting a new court order for past orders and a new exchange of information for all of the information on prior art and invention dates which has been exchanged up to now.

The general purpose of Rule 26(c)(8) is the protection of parties from fraud and the prevention of one party acquiring an unfair advantage over the other. *Id.* In certain cases this can be achieved by a simultaneous exchange of sensitive information so that neither party is privy to the other party's information first. That reasoning is completely out of context here where both parties have been exchanging invention dates and prior art for the past two years. In essence, a simultaneous exchange would serve absolutely no purpose at this point in the litigation. Plaintiff's Rule 26(c)(8) motion for simultaneous exchange of information is, therefore, denied.

### B. *Motion to Compel Discovery.*

The crux of this motion is the assertion that DuPont has failed to properly answer FDP's Interrogatory Nos. 6 and 15. Plaintiff contends that DuPont failed to comply with a Court Order requiring DuPont to Answer Interrogatory No. 15 and made misrepresentations regarding Interrogatory No. 6 to Judge Longobardi at an October 25, 1984 hearing. FDP asks this Court to compel DuPont to properly answer these two interrogatories and to strike portions of DuPont's summary judgment brief which rely on information which should have been produced pursuant to these interrogatories. Fed.R.Civ.P. 37.

Plaintiff's Interrogatory No. 6 requests DuPont to reveal its assertions of prior art under 35 U.S.C. § 102. It states in pertinent part:

> [S]tate with particularity all facts supporting these contentions [of prior art], including dates and places and identify all persons and documents involved, and state all facts and identify all documents ... and the names and addresses of the witnesses.

DuPont initially responded to this interrogatory on July 27, 1984, by directing FDP to the patents and publications which DuPont identified in response to plaintiff's Interrogatory No. 5 and explaining that it would produce additional documents for plaintiff's inspection and copying. DuPont added that under Fed.R.Civ.P. 33(c) the burden of ascertaining the desired information from those documents produced was substantially the same for plaintiff as it was for DuPont.

FDP then filed a motion to compel to require DuPont to respond more fully to Interrogatory No. 6. At the hearing on October 25, 1984, it was DuPont's assertion that they had supplied FDP with all of the information they had up to that point. FDP claims that this assertion by DuPont was a misrepresentation because it knew at that time that Griffin Wheel was a prior inventor but did not reveal it. However, at the time of the October, 1984, hearing, FDP's only disclosed invention date was "on or before March 14, 1981." This made it difficult for DuPont to tell what was or was not a prior invention. Judge Longobardi agreed and ordered FDP to respond to defendant's Interrogatory Nos. 3 and 4, relating to the dates of invention. Another Court Order was issued on April 19, 1985, requiring FDP to again reveal its invention dates.

FDP finally supplied the invention dates in May, 1985. On June 6, 1985, DuPont supplemented its response to plaintiff's Interrogatory No. 6 by listing names of prior inventors and users, including Griffin Wheel and Nuturn, and directing plaintiffs to previously produced documents and deposition testimony. Counsel for FDP answered this latest response by requesting Griffin Wheel documents which it had not previously received. DuPont responded with dates for each prior inventor or user, but explained that the Griffin Wheel documents were obtained in confidence and could not be disclosed. DuPont then suggested FDP subpoena these documents, but FDP never did.

■ FDP appeared perfectly content with the answers to Interrogatory No. 6 when it got them but now claims they were not responsive. FDP's main complaint is that it was not aware that Griffin Wheel was a prior inventor until right before the discovery deadline and was, therefore, prejudiced by not being able to pursue that line of discovery. This complaint rings hollow, however, when we see that FDP knew about Griffin Wheel as a prior inventor *four months* before the discovery deadline. Within those four months, FDP took no action to discover any additional information, subpoena the confidential documents

DuPont suggested they subpoena or take any depositions. As the discovery deadline approached, DuPont, not FDP, finally noticed the deposition of Griffin Wheel and submitted a protective order to Judge Longobardi so that FDP could review the confidential documents and the deposition could go forward. That Order was signed and the deposition taken. FDP's failure to pursue the information in a timely manner is not a basis for a determination by this Court that DuPont has failed to properly answer Interrogatory No. 6. DuPont supplied this information over the course of many months, and we find no basis for compelling additional responses.

Plaintiff's Interrogatory No. 15 is intertwined with No. 6 and states:

> For every reference which Defendant contends anticipates, pursuant to 35 U.S.C. § 102, ... identify and list with particularity the phrases, sections, paragraphs, tables and words contained in each said *reference* which disclose said elements of each claim. (Emphasis added).

FDP asserts that, in spite of Judge Longobardi's April 19, 1985, Order, requiring full answers to FDP's Interrogatory No. 15, DuPont has failed to properly respond to that interrogatory. FDP claims that the facts and documents on which DuPont relies to support its § 102 defenses were not specified until they were revealed in DuPont's April 14, 1986, summary judgment motion. In particular, FDP refers to the prior inventions of Griffin Wheel, Nuturn and DuPont.

■ A great deal of plaintiff's briefing on this issue is dedicated to convincing the Court that the word "reference", which is used in FDP's Interrogatory No. 15, means instances of prior invention as well as written references. FDP cites a long litany of cases which it says conclusively proves that "reference" does mean prior inventions. *See, Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 229 U.S.P.Q. 664, 667 (Fed.Cir. 1986); *General Battery Corp. v. Gould, Inc.*, 545 F.Supp. 731, 740, 215 U.S.P.Q. 1007, 1014 (D.Del.1982); *Thomas & Betts Corp. v. Winchester Electronics*, 519

F.Supp. 1191, 1200, 213 U.S.P.Q. 943, 949 (D.Del.1981); *Grefco Inc. v. Kewanee Industries, Inc.*, 499 F.Supp. 844, 208 U.S.P.Q. 218, 224 (D.Del.1980). The list is impressive, but not one of these cases actually defines "reference". They simply use the word "reference" in a context with prior art. It is true that the indication, at the very least, is that the term "reference" was used loosely to include all types of prior art. However, it is by no means clear that "reference" necessarily encompasses all prior inventions in all cases. Interrogatory No. 15 requires DuPont to identify "phrases, sections, tables, paragraphs and words." This language indicates *written* references. It is a logical assumption, therefore, that FDP was requesting exactly that. If FDP had wanted an analysis of all of DuPont's prior art defenses, they should have specified that in the interrogatory. They did not, and, therefore, this Court will not make a determination that DuPont was obligated to supply such detailed information.

■ Assuming that written references were sufficient, we have already reviewed the prior invention information relating to Griffin Wheel in conjunction with plaintiff's Interrogatory No. 6. Our finding that DuPont's responses were adequate is equally true here. With respect to Nuturn, DuPont has responded to every request to produce information relating to Nuturn's prior invention. In addition FDP's counsel was given access to all of Nuturn's files, permitted to go through everything and to copy any documents he chose. Regarding DuPont's own prior art and publications, although they have not given FDP free access to their files, they have made a sufficiently strong effort to respond to all discovery requests.

In view of DuPont's past compliance with FDP's discovery requests and prior Court Orders regarding discovery, plaintiff's request to compel production and to strike portions of defendant's summary judgment brief is denied. Finding no failure by DuPont to comply with any Court Order or to produce requested information, plaintiff's request for sanctions and attor-

ney's fees is also without merit. Fed.R. Civ.P. 37.

## C. *Motion to Compel.*

FDP is seeking an order compelling non-party Carlisle Corporation to produce more detailed responses to FDP's two deposition subpoenas duces tecum and to enforce the judicially-adopted Joint Stipulation against Carlisle. The two subpoenas were served on Carlisle on or about January 17, 1985, and July 23, 1985, respectively. The subpoenas together requested Carlisle to produce all documents relating to some 30 categories of information. Carlisle's strong objections to these requests precipitated negotiations between the parties which resulted in the Joint Stipulation. This Stipulation was adopted by the Court in Judge Longobardi's Order of November 25, 1985.

Much of the dispute over the Joint Stipulation centers on paragraph 6 which states in part:

> Should any patent claims not be directly readable upon *a given Carlisle composition,* then Carlisle will upon request disclose to FDP's outside counsel the identity of the more specific ingredients and the weight ranges in that composition so as to enable FDP's counsel to ascertain whether the doctrine of equivalents can be asserted for a given claim element and specific ingredient. (Emphasis added.)

Carlisle has been very cautious about disclosing the compositions of its friction products because of their high value to its business and the potential for economic disaster if the compositions were to be disclosed. Carlisle asserts that, for these reasons, it purposefully limited the language in paragraph 6 of the Stipulation to a "given" Carlisle composition, presumably concerning brake materials advertised by DuPont in 1983. FDP on the other hand asserts that it is entitled to all of Carlisle's compositions which contain Kevlar pulp.

Up to this point Carlisle has produced hundreds of documents including laboratory notebook pages, test reports, experimental data and sales and purchase infor-

mation concerning Kevlar and non-Kevlar products. Carlisle has also given FDP two summaries of its experimental and commercial compositions. These two composition summaries are at the heart of FDP's motion. They claim that more detailed information regarding these summaries is necessary to use as support for FDP's charge that DuPont "induced" others to infringe its patent by urging them to buy Carlisle brake material. Specifically, FDP alleges that DuPont advertised a certain type of Carlisle brake composition at a DuPont booth at one or more trade shows in 1983.

██ It is well established that there is no absolute privilege against discovery of trade secrets. *Coca-Cola Bottling Co. of Schreveport, Inc. v. The Coca-Cola Company,* 107 F.R.D. 288, 227 U.S.P.Q. 18, 21 (D.Del.1985). The non-moving party must first show that the requested information is a trade secret and that the disclosure of that information might be harmful. *Id.* Carlisle supports its contention that the information contains trade secrets by the affidavit of John Dunderdale, Vice President-Engineering, of Motion Control Industries Division of Carlisle. Mr. Dunderdale, in his affidavit, states that the compositions FDP is seeking are "vital, major trade secrets" because friction compositions cannot be effectively analyzed, nor can the details of its processing be determined by a third party. The harm in disclosing such trade secrets would be the ability of technical representatives of FDP, DuPont, or any other company which obtains the information, to use the compositions and processes without identifying the source and thereby reap the benefits and profits that rightfully belong to Carlisle. Moreover, because of the difficulty in analyzing frictional products, it would be impossible for Carlisle to determine if their proprietary information was being used by others. Accordingly, we find that the Carlisle compositions are trade secrets, and that their disclosure could severely harm Carlisle's business.

Once the party opposing the motion makes a showing of a trade secret, the burden shifts to the moving party to establish that the requested information is relevant and necessary to the cause of action. *Coca-Cola Bottling Co.,* 107 F.R.D. 288, 227 U.S.P.Q. at 21; *Centurion Industries, Inc. v. Warren Steurer and Associates,* 665 F.2d 323, 325, 213 U.S.P.Q. 36, 38 (10th Cir.1981). Specifically, FDP asserts that the composition of the Carlisle semimetallic and organic brakes that DuPont promoted for sale are covered by FDP's patent claims 6 and 7, which are semi-metallic, and 11 and 12, which are organic. For this reason, the information is alleged to be relevant and necessary to FDP's suit against DuPont.

██ The fact that FDP does not know, but only speculates, that the requested information will aid in its action against DuPont does not mean that this information is not relevant. *Coca-Cola Bottling Co.,* 107 F.R.D. 288, 227 U.S.P.Q. at 24. However, we still find FDP's relevancy argument unconvincing. The evidence of record shows that the compositions which Carlisle has produced contain breakdowns of composition components to the same extent as those in the '211 patent. Because the previously produced Carlisle composition summaries are as specific as the compositions in the patent, they are sufficient to allow FDP to make a determination of infringement. The fact that FDP's patent is unspecific as to the details it seeks from Carlisle prohibits it from delving into more specific information on these same issues from Carlisle. This additional detail is simply irrelevant to the infringement of the '211 patent.

Moreover, FDP requested a similar breakdown of compositions from another non-party, Auto Friction. The District Court for the District of Massachusetts denied the request and the Court of Appeals for the Federal Circuit affirmed. *See, Friction Division Products, Inc. v. E.I. DuPont de Nemours & Company, Inc.,* 795 F.2d 1019 (Fed.Cir.1986). That motion was denied because Auto Friction had already provided FDP with composition breakdowns as specific as those in the '211 patent. The situation here is the same.

FDP's assertion that Carlisle is still obligated to provide the additional information

based on the Joint Stipulation is groundless. The Stipulation appears to be ambiguous on the issue of exactly how much information Carlisle is required to produce. However, in no event does it require production of more than would be necessary to allow FDP to determine inducement of infringement. The "doctrine of equivalents" referred to in the Joint Stipulation extends the possibility of infringement to compositions that, although different, perform substantially the same function in substantially the same way and for substantially the same purpose. This does not support FDP's request for more information since there is no need to resort to this doctrine when the information has already been produced in a form as specific as that of the patented claims. There is no reason for Carlisle to agree to produce more than would be necessary to show DuPont's infringement. In view of the above, FDP's motion for more specific technical information from non-party Carlisle is denied.

### D. *DuPont's Motion for Summary Judgment.*

#### 1. *Standards for Summary Judgment.*

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law". In a summary judgment proceeding, the District Court shall not decide issues of fact, rather, it shall determine if a genuine issue of material fact exists. *Ness v. Marshall,* 660 F.2d 517, 519 (3rd Cir. 1981). The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. *Gans v. Mundy,* 762 F.2d 338, 341 (3rd Cir.1985). The Court must view any factual inferences drawn from the evidence in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The District Court should only decide the case as a matter of law where the facts are undisputed or "the evidence is

so one-sided that it leaves no room for any reasonable differences of opinion as to any material fact." *Tunis Bros. Co., Inc. v. Ford Motor Co.,* 763 F.2d 1482, 1489 (3rd Cir.1985). However, the mere existence of some evidence in support of the non-moving party will not be sufficient; there must be enough evidence to enable a jury to reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* — U.S. ——, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

In moving for summary judgment, DuPont presents four grounds to support its position that all or parts of the '211 patent are invalid:

1. 35 U.S.C. § 102(a): Public dissemination of information by DuPont on the use of Kevlar pulp to the friction industry during the late 1970s and early 1980s invalidates the '211 patent since the patented subject matter was known by others.

2. 35 U.S.C. § 102(b): The generic and organic claims of the '211 patent were described in printed publications more than one year before the September 15, 1981, application for the patent.

3. 35 U.S.C. § 102(f): The generic and organic claims of the '211 patent were not conceived by FDP but were derived from DuPont and, therefore, FDP is not the "inventor."

4. 35 U.S.C. § 102(g): The claimed subject matter of the '211 patent was invented by DuPont and made by others before FDP's earliest alleged date of invention, and that work was not abandoned, suppressed or concealed.

We will deal first with DuPont's argument that printed publications, appearing more than one year before the application for the '211 patent, invalidate the generic and organic claims.

#### 2. *Prior Publication.*

On April 15, 1980, at a Society of Automotive Engineers ("SAE") conference, DuPont's Dr. Halvar Loken presented a paper entitled "Asbestos Free Brakes and Dry Clutches Reinforced with KEVLAR Aramid Fiber" ("Loken Paper").

Table 2 of the Loken Paper disclosed a Molded Test Brake Mix of

50% Wollastonite

20% Barium Sulfate

15% Cashew Friction Particle

15% Dry Phenolic Resin

to which was added Kevlar, in fiber or pulp form, at the 5% Level.

The Loken paper further taught that Kevlar pulp can also be used to reinforce wet and dry friction mixes. The pulp knits well and effectively prevents crack propagation, increasing the toughness of the mix.

Copies of the paper were on display and available for sale at the SAE Conference. The Loken paper was date-stamped and available at the SAE library as of April 29, 1980. The SAE library had a card catalogue index that contained an index card for the Loken paper. This index card was prepared at the latest by the end of May, 1980. Copies of the Loken paper were also supplied to the University of Minnesota Engineering Library on June 9, 1980; to the General Motors Research Division by June, 1980; to Auto Specialty Corporation prior to September 15, 1980; and to Auto Friction about June 30, 1980.

DuPont contends that the Loken Paper anticipates the generic and organic claims of the '211 patent pursuant to 35 U.S.C. § 102(b) which provides that there is no entitlement to a patent where "the invention was ... described in a printed publication ... more than one year prior to the date of the application for patent in the United States." There is no dispute that FDP filed its application for the '211 patent on September 15, 1981.

 The first requirement under § 102(b) is that there be a "printed publication". Accessibility to the public interested in the art is the key factor in determining whether a particular paper would be considered a "printed publication" under the statute. *In re Hall*, 781 F.2d 897, 899, 228 U.S.P.Q. 453 (Fed.Cir.1986). *In re Wyer*, 655 F.2d 221, 226, 210 U.S.P.Q. 790, 794 (C.C.P.A.1981). Cataloging a paper in a technical or scientific library makes the publication sufficiently accessible to those interested in the art to satisfy the requirements of § 102(b). 781 F.2d at 900. The publication requirement may also be satisfied by distributing or making the paper available at a conference where persons interested or skilled in the subject matter of the paper were told of the paper's existence and informed of its contents. *Massachussetts Institute of Technology v. AB Fortia*, 774 F.2d 1104, 1109, 227 U.S.P.Q. 428 (Fed.Cir.1985). Likewise, distribution to commercial companies without restrictions on use constitutes publication. *Garrett Corp. v. United States*, 422 F.2d 874, 878, 190 Ct.Cl. 858, 164 U.S.P.Q. 521 (1970).

With these legal principles in mind, it is clear that the Loken Paper was a printed publication because of its availability at the SAE conference, in libraries and with commercial companies. These facts are all in evidence and, except for FDP's conclusory statements in its brief that these facts are not in evidence, nothing has been produced to create a question as to their existence.

The requirement for summary judgment is that there be no *genuine* issue of material fact. *Anderson*, 106 S.Ct. at 2510. Since the facts concerning "publication" indicate a lack of dispute as to a *genuine* issue of material fact, we will rule that the presentation of the Loken paper and its distribution, constitute "publication" at least one year prior to September 15, 1981. *Massachusetts Institute of Technology*, 774 F.2d at 1109.

We must now turn to the question of whether this publication describes the invention of the '211 patent. The Third Circuit has set out the following standard for determining whether or not prior publication will invalidate a patent:

For a prior publication to be sufficient to defeat a patent it must exhibit a substantial representation of the invention in such full, clear and exact terms that one skilled in the art may make, construct and practice the invention without having to depend on either the patent or on his own inventive skills.

*Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.*, 546 F.2d 530, 544 (3rd Cir.1976) *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977) (quoting *Philips Elec. & Pharm. Ind. Co. v. Thermal & Elec. Ind., Inc.*, 450 F.2d 1164, 1169 (3d Cir.1971)). *Grefco, Inc. v. Kewanee Industries, Inc.*, 499 F.Supp. 844, 850 (D.Del.1980).

Of the 40 separate claims in the '211 patent, DuPont asserts that the Loken Paper anticipates the generic claims (Nos. 1–4, 18–26, 30–34, and 38–40) and the organic non-asbestos claims (Nos. 8–12, 28 and 36). At the outset, we note that the '211 patent discloses the same preforming production methods known and used in the manufacture of friction materials in the prior art. The mixing and preforming processes are the same except for slight differences in the temperatures and times in the curing process. Moreover, these differences are irrelevant to the claimed process since they are not set forth anywhere in the patent claims, specifications or the file history.

The compositions outlined in the generic claims of the '211 patent read as follows:

1. A non-asbestos type friction material composition suitable for use as a friction element consisting essentially of a *thermosetting binder, a fibrous reinforcing material, and an effective amount of an aramid polymer pulp fiber* to result in good structural integrity of a preform manufactured from said friction material. (Emphasis added).

2. The composition of claim 1, wherein: said non-asbestos type friction material is a member selected from the group consisting of semi-metallic material, organic non-asbestos material, and hydrocarbon cold forming material.

3. The composition of claim 2, wherein: said aramid polymer pulp fiber is included in an effective amount of 15% by weight based upon the total weight of all other ingredients.

4. The composition of claim 3, wherein: said aramid pulp fiber is included in an amount from about 0.5% to 10% by weight based upon the total weight of all other ingredients.

As noted from claims three and four, the preferred range of Kevlar pulp in the composition is from 0.5% to 15%. The other ingredients of the composition include a thermosetting binder and a fibrous reinforcing material. It is undisputed that the Loken Paper discloses a non-asbestos friction product formulation containing a thermosetting binder (phenolic resin), a fibrous reinforcing material (wollastonite), and an effective amount of aramid polymer pulp fiber to result in good structural integrity of a preform (5% Kevlar pulp). The ingredients are the same in both cases, and the 5% Kevlar pulp is within the '211 patent's preferred range of 0.5% to 15%. Coming within the ranges specified in the patent is sufficient to constitute anticipation. *Titanium Metals*, 778 F.2d at 781. Since the 5% Kevlar pulp taught by the Loken Paper is squarely within the range outlined in the '211 patent, the compositions are the same. Therefore, the Loken Paper necessarily anticipates the generic claims of the patent. Even if FDP disputes that one of ordinary skill in the art would be able to recognize the Loken invention without further research or experimentation, the generic compositions simply are not *new* as required by 35 U.S.C. § 101. Consequently, a patent containing those compositions cannot be valid. *Massachusetts Institute of Technology*, 774 F.2d at 1109; *Titanium Metals* 778 F.2d at 781.

The organic non-asbestos claims of the '211 patent include "a thermosetting resin, cashew nut particles, non-asbestos fibers and more than 20 wt. percent of a powdered inorganic compound having a Moh's hardness rating of greater than 2 and less than 5 and capable of being subjected to temperatures of greater than about 425°C without substantial chemical or physical alteration." '211 patent claim 9. The Loken Paper contains these ingredients with Barium Sulfate (BaSO4) being the powdered inorganic compound. Barium Sulfate has a Moh's hardness rating of 3–3.5 and a melting point of 1580°C, both

within the ranges specified by the '211 patent.[3]

FDP does not deny these similarities between the '211 patent organic compositions and the Loken Paper compositions. Indeed, FDP's only dispute is that the Loken Paper does not specifically refer to "preform". This position is contested by DuPont because of the language in the Loken Paper, *"The pulp knits well* and effectively prevents crack propagation, increasing the toughness of the mix" (emphasis added). We do not, however, have to resolve this question of whether or not the Loken Paper discloses that the addition of Kevlar pulp to the composition results in marked improvement in the structural integrity of preforms because such a reference would be to an inherent property of a known composition and, as such, is not patentable. *General Electric Co. v. Jewel Incandescent Lamp Co.,* 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43 (1945); *Titanium Metals Corp. of America v. Banner,* 778 F.2d 775 (Fed. Cir.1985); *In re May,* 574 F.2d 1082, 1089–90 (C.C.P.A.1978); *In re Tomlinson,* 363 F.2d 928 (C.C.P.A.1966); *Raffold Process Corp. v. Castaneda Paper Co.,* 98 F.2d 355 (3d Cir.1938).

FDP also asserts that the Loken Paper is directed more towards Kevlar fiber than Kevlar pulp and so cannot anticipate the '211 patent. A failure of Dr. Loken to indicate in his paper that Kevlar pulp was preferred over Kevlar fiber or to focus more on the pulp is not relevant to the question of anticipation and does not change our conclusion. *Application of Nehrenberg,* 280 F.2d 161, 164 (C.C.P.A. 1960).

█ Because we find that the Loken Paper teaches the composition of friction products, containing Kevlar pulp, which products are to be processed in the conventional manner for the manufacture of friction materials, it follows that the organic and generic claims of the '211 patent are invalid under 35 U.S.C. § 102(b).

Plaintiff argues against such a conclusion by claiming that there are process limitations in all its patent claims: that Kevlar pulp is used to provide integrity to preforms. Plaintiff states at pages 77–78 of its brief that the process limitations in the '211 patent require not only the composition but a preform manufactured from it:

> Since the pulp is used specifically to improve the integrity of a preform in the manufacturing process, that process limitation must be deemed material in construing the FDP claims.

This argument, however, ignores the fact that preforms and other methods of processing friction materials have been known and used for years with asbestos compositions. An important problem, which arose when the health hazards of asbestos became known, was how to substitute other ingredients for asbestos but still to continue to use the existing manufacturing equipment and techniques. Preforms containing asbestos had good structural integrity. To use existing production facilities, the substitute for asbestos also had to have this characteristic. The Loken Paper, in promoting the use of Kevlar fiber and Kevlar pulp for friction applications, recognized that researchers, looking for a replacement for asbestos, were seeking one that would "make it possible to continue to use the production methods that have been developed for asbestos-based friction materials." Loken then proposed Kevlar fiber and/or Kevlar pulp, in a composition which anticipated the generic and organic claims of the '211 patent.

The '211 patent in the Background of the Invention Section described the same problems which were presented in finding a substitute which could be handled in the same manner as asbestos compositions:

> The elimination of asbestos from friction material formulations has created a substantial manufacturing problem. The problem is that the non-asbestos containing preforms normally pressure formed at ambient temperatures prior to hot pressing and heat curing, do not possess acceptable structural integrity so as to be able to withstand subsequent handling and storage without breakage. On the other hand, asbestos-containing com-

---

**3.** *See* CRC Handbook of Chemistry and Physics, pp. B–76, B–197 and B–198 (65th Ed. 984–85).

positions possess the requisite structural integrity to withstand such handling. This invention solves the structural integrity problem encountered in non-asbestos preforms with the expedient of incorporating an effective amount of a pulp fiber form of an aramid polymer into the friction material to ensure the attainment of sufficient structural integrity to withstand the subsequent handling and/or storage of the compact prior to further processing.

The "process" to which FDP refers in arguing "process limitations" for the '211 patent is the conventional manufacturing procedures that had been used to fabricate asbestos-containing brakes and other friction materials.[4] The composition disclosed by FDP in the generic and organic claims of the '211 patent had been published in the Loken Paper more than one year prior to the application for the '211 patent. Any reference in the '211 patent to "process" is, in fact, reference to conventional production methods, well known in the friction industry. Nothing new is described either in the composition to be used or the production techniques by which it is to be processed. The circular reasoning implicit in a claim that the "inventor" has taken a composition, described by an earlier researcher as a substitute for asbestos-containing friction formulations, and that "inventor" has discovered that this composition can be used in place of asbestos-containing friction formulations, does not rise to the level of invention.

 Moreover, insofar as FDP contends it discovered that Kevlar pulp gives good green strength to the composition, enabling existing manufacturing techniques to be used, FDP is merely pointing out an inherent property of the composition previously disclosed in the Loken Paper. As we point out *supra*, discovery of an inherent property of a known composition is not patentable. *See also In re Fracalossi*, 681 F.2d 792, 215 U.S.P.Q. 569 (C.C.P.A. 1982).

In holding that the evidence is clear and convincing that the Loken Paper anticipated the '211 patent, we note also that FDP did not include the Loken Paper in its prior art statement, presented to the Patent and Trademark Office ("PTO") with the application for the '211 patent, and that the Loken Paper was never brought to the attention of the PTO in connection with the granting of the '211 patent.

DuPont also claims that the RDP article anticipates the generic and organic claims. There has not been an adequate showing at this time to determine whether there is sufficient disclosure in the RDP article to enable someone skilled in the art to produce friction formulations within the claims of the '211 patent. *See, Application of Samour*, 571 F.2d 559, 197 U.S.P.Q. 1 (C.C.P.A.1978). Because we have already concluded that the Loken Paper does anticipate these claims, it is not necessary at this time to decide whether the RDP article does also.

3. *FDP is not the "Inventor"*.

On November 1, 1979, Drs. Loken and Merriman from DuPont visited Dougherty and Gallagher, the inventors of the '211 patent, at FDP. DuPont claims that on that occasion it gave FDP one of Loken's non-asbestos brake pad formulas:

50% Wollastonite
20% Barium Sulfate
15% Cashew Friction Particle
15% Dry Phenolic Resin
(Kevlar pulp or fiber added at 5% level)

FDP acknowledges the DuPont visit on November 1, 1979. It also contends that it invented the generic and organic claims of the '211 patent on that day. This is based upon a mixture prepared by Henry Sochalski, under Dougherty's direction. Neither Gallagher nor Dougherty has any present recollection of what was said at the November 1 meeting with DuPont.

DuPont argues that it, and not Gallagher and Dougherty, invented the generic and organic claims and that the '211 patent

---

4. Curiously, although FDP states that its process limitation includes the preform, one claim of infringement that FDP makes is by Nuturn

Brake Linings MG 60 and MG 61, which do not go through a "preform" stage but are extruded into the nominal shape of a coil of brake lining.

simply reflects what DuPont told FDP during the November 1, 1979, presentation. For that reason DuPont asserts that the '211 patent is invalid under 35 U.S.C. § 102(f). Because we have already ruled that these claims are invalid under § 102(b), we will not attempt to resolve at this time whether there is a material issue of fact concerning what information was communicated by DuPont to FDP at the November 1 meeting.

### 4. *Prior Acts.*

DuPont contends that the prior work of DuPont, Griffin Wheel and Nuturn invalidate the generic, organic and semi-metallic claims of the '211 patent. The generic and organic claims have already been found to be invalid. Therefore, the invalidity of the semi-metallic claims is the only remaining issue. 35 U.S.C. § 102(g) provides that there is no entitlement to a patent where:

> [B]efore the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed or concealed it.

■ There are three significant questions which this section raises: (1) the date of the applicant's invention relative to any other invention; (2) whether the prior act actually constitutes another invention; and (3) assuming a prior invention, whether that invention has been abandoned, suppressed or concealed. We find that there is a genuine question of material fact as to one aspect or another of the DuPont, Griffin Wheel and Nuturn prior work, as we will discuss below. These questions make it impossible for us to decide this issue on a motion for summary judgment. *See, Tunis Bros. Co., Inc. v. Ford Motor Co.,* 763 F.2d at 1489.

#### (a) *Reduction to Practice.*

The question of whether work of DuPont, Griffin Wheel and Nuturn could be considered to be prior inventions turns on the standards set out in *Hercules Inc. v. Exxon Corp.,* 497 F.Supp. 661, 668, 207 U.S.P.Q. 1088, 1095 (D.Del.1980):

> Section 102(g) clearly covers *actual reductions to practice,* which consist of three elements: (1) production of the

claimed composition; (2) recognition of its properties; and (3) identification of its specific practical utility. Each of these elements must be established using corroborated proof. (Emphasis added).

■ These standards demonstrate that there is no requirement that the "prior invention" be commercialized, as FDP suggests, in order to be reduced to practice. *Id.; Steinberg v. Seitz,* 517 F.2d 1359, 1363, 186 U.S.P.Q. 209 (C.C.P.A.1975). The key is whether the invention *can* be commercialized or has reached the point where "practical men [would] take the *risk* of commercializing the invention." *Goodrich v. Harmsen,* 442 F.2d 377, 383 (C.C.P.A. 1971).

DuPont's work involving the '211 patent's semi-metallic claims consists of a visit and work done by DuPont at the Inland Division of General Motors Corporation on May 2, 1978. There appears to be no dispute that tests were done on that date on a semi-metallic friction product mix containing five percent Kevlar pulp. It is also undisputed that semi-metallic brakes were made from the mix and tested for friction and wear in accordance with industry recognized test procedures.

FDP does question whether a preform was made from this mix. However, the test results specifically state that the mix was "cold pressed" (preformed) prior to cure, and no contrary facts are in evidence that even suggest a lack of preforming. The conclusory statements of FDP's counsel do not alone raise a genuine issue of fact. *Anderson,* 106 S.Ct. at 2510. However, even assuming preforms were made, it is unclear whether the tests performed by DuPont were sufficient to be considered a reduction to practice within the meaning of the standards outlined by Judge Wright in *Hercules.*

DuPont also asserts that the 13A Griffin Wheel formula and the Griffin Wheel U.S. Patent No. 4,313,869 ('869 patent) come within and anticipate the '211 patent semi-metallic claims. The 13A formula, each ingredient of which is disclosed in the '869 patent, is used to manufacture railroad

brakes and contains about 34 percent of iron and steel fiber. According to Dougherty, one of the named inventors of the '211 patent, in order for a formulation to be considered "semi-metallic" in the friction industry, there must be a "preponderance of metal" or a "great percentage" of metal in the formula. DuPont did not originally consider the 34 percent in the 13A formula to come within Dougherty's definition of semi-metallic. For this reason, DuPont did not claim the 13A formula to anticipate the semi-metallic claims until FDP, in its answering brief, moved back the date of the semi-metallic invention by including the June 10, 1980, Vearling experiment as a semi-metallic brake. The Vearling experiment used a mix with about 15 percent metallic components.

■ Because the question of whether the 13A formula and the '869 patent anticipate the semi-metallic claims of the '211 patent was raised only in DuPont's Reply Brief and because the Court cannot determine from the record presently before us whether the 13A formula and the '869 patent in fact do anticipate the semi-metallic claims, we will not grant summary judgment on this point at this time. In view of the fact that it was FDP's amendment of the invention date which raised this question at this late date, we will permit DuPont to resubmit this question when, and if, appropriate.

DuPont also asserts that Nuturn's semi-metallic brakes 3401 N4 (NF–10–FE) anticipate the semi-metallic claims of the '211 patent. It is clear that the 3401 N4 (NF–10–FE) disc brake pads are within the semi-metallic claims of the '211 patent. FDP has tried to make an issue of this by submitting "scribbled notes" of Nuturn's Euan Parker and a document which on its face indicates it is not the 3401 N4 formula. FDP then claims that these two documents along with the third signed copy of the formula show that an ambiguity exists as to which of these is the real formulation. The ingredients of the 3401 N4 formula are not ambiguous and such tactics by FDP will not make them so. Mr. Parker has succinctly and unambiguously testified that

his notes were just that—notes, and were in no way considered to be the NF–10–FE formula. The second document identifies on its face that it is a variation of 3401 N4 with 1¼ percent Lubolid. There is no ambiguity. Moreover, FDP contends that Nuturn has infringed the semi-metallic claims of the patent by its own use of these brake pads. If FDP was so convinced that the 3401 N4 was not the same formula as that in the '211 patent, they would not be claiming infringement.

FDP questions whether Nuturn has reduced these disc brake pads to practice. As we have stated, the requirements for reducing an invention to practice are something less than commercialization. *Steinberg v. Seitz*, 517 F.2d at 1363. There is no dispute that Nuturn commercialized its disc brake pads, but FDP argues that a subsequent modification by Nuturn of NF–10–FE prohibited the disc brake pads from being reduced to practice. The modification consisted of replacing the abrasive, aluminum oxide with a lubricant, Lubolid, to clear up the "jutter" which some Nuturn brakes exhibited.

■ "A reduction to practice does not require that the invention be perfect or incapable of further improvement." *Cochran v. Kresock*, 530 F.2d 385, 391, 188 U.S.P.Q. 553 (C.C.P.A.1976). However, there is still a genuine factual dispute as to how much the modification effected the original formulation and Nuturn's compliance with the standards for reduction to practice outlined in *Hercules*.

(b) *Abandon, Suppress and Conceal.*

■ FPD's final claim is that DuPont, Griffin Wheel and Nuturn's semi-metallic inventions were all abandoned, suppressed and concealed and, therefore, cannot anticipate the '211 patent. In order to avoid a finding that a prior invention was abandoned, suppressed or concealed, under 35 U.S.C. § 102(g), the prior inventor must take affirmative steps to make the invention publicly known. *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 586 F.Supp. 1176, 1215, 222 U.S.P.Q. 863, 893 (D.Kan.1984). Making the invention publicly known re-

quires only that the public enjoy the *benefits* or the use of the prior invention. *Del Mar Engineering Labs v. United States*, 207 Ct.Cl. 815, 524 F.2d 1178, 1185 (1975); *Dunlop Holdings Ltd. v. Ram Golf Corp.*, 524 F.2d 33, 37 (7th Cir.1975). Public use of the invention, without disclosing the details of it, is sufficient to negate any intention to abandon, suppress or conceal. *Id.* Engaging in activities designed to bring about public or commercial use of the invention is also sufficient. *Del Mar Engineering Labs*, 524 F.2d at 1185. *Calderon Automation, Inc. v. General Motors Corp.*, 206 U.S.P.Q. 782, 786 (E.D.Mich. 1980). Filing a patent application which discloses the prior inventor's work will bar a finding of abandonment as well. *Cosden Oil & Chemical Co. v. American Hoechst Corp.*, 543 F.Supp. 522, 538, 214 U.S.P.Q. 244, 257 (D.Del.1982).

There can be no question but that DuPont has been actively disclosing its knowledge on the use of Kevlar pulp in friction products. In fact, DuPont has done nothing but promote Kevlar pulp throughout the industry since it first realized its potential as an asbestos replacement. DuPont's visits to FDP and GM, the Loken Paper and RDP article are all evidence of its efforts to bring about the public or commercial use of its invention.

 Griffin Wheel filed its '869 patent application disclosing its Kevlar pulp work in May, 1980. Attempting to secure a patent provides support for the conclusion that there was no intent to abandon the invention. *Cosden Oil & Chemical Co.*, 543 F.Supp. at 537. Coupling this patent application with Griffin Wheel's continued efforts to commercialize Kevlar pulp-containing disc brakes, leaves no doubt that Griffin Wheel did not intend to abandon, suppress or conceal its prior invention. FDP does not dispute Griffin Wheel's general efforts. It only claims that the 13A formulation itself was never disclosed to the public and that the 13A formula itself was never commercialized. However, the formula does not have to be disclosed to the public. *Dunlop Holdings Ltd.*, 524 F.2d at 37. Griffin Wheel's continued testing and efforts at improvement to commercialize its invention are sufficient. *Del Mar Engineering Labs*, 524 F.2d at 1185. Whether or not the 13A formula was successful commercially is completely irrelevant to this question of abandonment. Likewise, FDP's assertion that the formula was never disclosed to the public is an argument without merit. Only the benefits need be disclosed. *Id.* A dispute over whether the public was sufficiently exposed to the benefits relates to the issue of reduction to practice, not abandonment.

Finally, there is no evidence to support a finding that Nuturn's invention was abandoned, suppressed or concealed. FDP's only argument is that the Nuturn process was proprietary to Nuturn and not disclosed to the public. We reiterate that this argument is completely invalid as a matter of law since the *process* itself does not have to be disclosed to the public in order to avoid a finding of abandonment, suppression or concealment of the invention. *Id.; Dunlop Holdings Ltd.*, 524 F.2d at 37. Only the benefits of the inventor's work need reach the public. *Id.*

### 5. *Prior Knowledge.*

DuPont argues in a footnote on page 50 of its Opening Brief that its public dissemination of the alleged invention also invalidates the claims of the '211 patent under 35 U.S.C. § 102(a) since the patented subject matter was known by others. We do not need to consider this argument in regard to the generic and organic claims since we have already held them invalid. Moreover, we do not find an adequate record of public dissemination concerning the semi-metallic claims to consider that aspect of the question at this time.

### III. *Conclusion.*

For the foregoing reasons, plaintiff's motion for simultaneous exchange of prior art and dates of invention, motion to compel discovery and strike portions of defendant's summary judgment brief, and motion to compel third party Carlisle to produce additional technical information are denied. Defendant's motion for summary judgment

is granted in part and denied in part. The motion is granted with respect to the generic and organic nonasbestos claims of the '211 patent and denied as to the semi-metallic claims.